**STATE of Tennessee, Appellee,**

v.

**James O'Neal GORDON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 11, 1982.

Permission to Appeal Denied by the Supreme Court Nov. 1, 1982.

James Daniel Freemon, Lawrenceburg, Charles J. Barnett, Waynesboro, for appellant.

William M. Leech, Jr., Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, Robert H. Gay, Dist. Atty. Gen., Jim Hamilton, Asst. Dist. Atty. Gen., Lawrenceburg, for appellee.

## OPINION

DUNCAN, Judge.

The appellant-defendant, James O'Neal Gordon, pled guilty to armed robbery and to aiding and abetting second degree murder. He received concurrent penitentiary sentences of thirty-five (35) years and fifty (50) years, respectively. The defendant appeals pursuant to *Tenn.R.Crim.P.* 37(b)(2)(i) a certified question of law challenging the admissibility of his confession at the juvenile court transfer hearing and circuit court acceptance hearing. We hold that his confession was admissible.

The defendant was arrested at approximately 12:51 a.m. on April 5, 1981. He was questioned at approximately 5:00 a.m., was advised of his *Miranda* rights, and shortly thereafter gave a confession to the police. He was taken before a juvenile judge at 7:00 a.m., and his aunt was notified of his arrest at approximately 9:30 a.m. The defendant was ten (10) days short of his eighteenth birthday when arrested. The defendant contends that the questioning and detention of him prior to being released to his guardian or being taken before a juvenile judge violated the provisions of T.C.A. § 37–215 and, citing T.C.A. § 37–227(b), says that this violation precluded the use of his confession at the juvenile court transfer hearing and at the circuit court acceptance hearing.

The defendant relies on two (2) Tennessee Supreme Court cases, *State v. Strickland,* 532 S.W.2d 912 (Tenn.1975) and *Colyer v. State,* 577 S.W.2d 460 (Tenn.1979) which held that in the absence of police compliance with the requirements of T.C.A. § 37–215, questioning of juvenile defendants was barred. This reliance is misplaced

since both *Strickland* and *Colyer* were construing T.C.A. § 37–215 as originally drafted, and this statute was significantly amended in 1976. The former version of T.C.A. § 37–215 required that the child be brought before the court or released to his parents or guardian, "directly with all reasonable speed," and further required that "any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed in this chapter and rules of court." As noted in *Colyer, supra,* the legislature amended this section by the Public Acts of 1976, ch. 745 § 1 (effective March 22, 1976), deleting entirely the sentence pertaining to the detention and questioning of juveniles, and changing the words "directly with all reasonable speed" to "within a reasonable time." *Colyer, supra,* at 462. Both this Court, and the Court of Appeals have held that by virtue of this amendment, T.C.A. § 37–215(a) no longer specifies requirements for custodial interrogation of juveniles. *Randall Wade Proctor v. State,* Nos. 997–998 (Tenn.Cr.App., Nashville, July 18, 1977); *State v. Johnny Manus,* Cannon Law (Tenn.App., February 1, 1982).

Thus, since there is no longer any statutory prohibition against the questioning of a juvenile defendant after his arrest, there only remains the statutory issue of whether the "reasonable time" requirements of T.C.A. § 37–215(a) have been met, and the constitutional issue of whether under the totality of the circumstances the defendant's confession was the result of a knowing and intelligent waiver of his constitutional rights. Both the juvenile court judge and the circuit court judge answered these questions in the affirmative and we agree.

The defendant and one Andrew Braden committed armed robbery upon a Kentucky Fried Chicken employee as he was making a night deposit on April 4, 1981, in Columbia, Tennessee. As the defendant and Braden were fleeing the scene in Braden's car, they were stopped by an officer of the Columbia Police Department for reckless driving. A scuffle ensued and Braden shot the police officer with the officer's service revolver. The defendant admitted holding the officer down at some point during the struggle. The defendant and Braden left the scene, hid the guns underneath the defendant's grandfather's house, met up with two (2) other individuals and switched cars. Subsequently, this car was stopped by the police and its occupants were arrested at approximately 12:51 a.m. on April 5, 1981.

The defendant was the last of the four (4) individuals to be questioned, and this questioning did not begin until 5:05 a.m., some four (4) hours after he was arrested. The defendant was read his *Miranda* rights, and signed a written waiver of those rights. He gave a confession to the police, outlining the information related above. A tape recorded statement was also made, and this statement also indicated that the defendant had been informed of, and understood his rights. Approximately thirty (30) minutes after the defendant's written confession was completed and signed, he was taken before a juvenile court judge at 7:00 a.m.

The defendant's mother lived in Detroit, Michigan. The defendant was living with an aunt, Louise Stone, but often stayed with his grandfather, O'Neal Gordon. Apparently, neither the aunt or grandfather had legal custody of the defendant.[1] The record indicates that the defendant declined several offers to contact his relatives prior to the giving of his confession.

There can be no doubt, given the violent nature of the crimes for which the defendant was arrested, that his initial detention was warranted. T.C.A. § 37–214. In view of the defendant's age, the relatively brief time period involved in his detention and questioning, the unavailability of any parent or legal guardian, and the defendant's own refusal to contact his aunt or grandfather, we find no violations of T.C.A. § 37–215(a). Under the time sequences involved in this case, we find that the defendant was brought before the juvenile judge

---

1. The defendant's aunt, Louise Stone, testified that the defendant's mother had given her custody of the defendant, so as to aid Ms. Stone in obtaining public housing.

within the "reasonable time" period contemplated by the statute.

Further, a trial court's finding with reference to compliance with the *Miranda* mandate by the police and as to the voluntariness of a confession is conclusive on appeal unless the evidence preponderates against such a finding. *Braziel v. State*, 529 S.W.2d 501 (Tenn.Cr.App.1975). Clearly, the evidence does not so preponderate in this case. The evidence fully supports the findings of both judges below. The record shows that the defendant was fully advised of his *Miranda* rights, that he understood them and intelligently and knowingly waived them. Also, we note that the voluntariness and admissibility of a juvenile's confession is not dependent upon the presence of his parents or an attorney at the interrogation when full *Miranda* warnings have been given and understood. *Braziel v. State, supra.*

We hold that the defendant's confession was properly admitted into evidence in the proceedings below. His conviction is affirmed.

WALKER, P.J., and DWYER, J., concur.