# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY 1997 SESSION



**FILED**

**March 17, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,　　　)
　　　　　　　　　　　　　　)　　**NO. 01C01-9607-CC-00282**
　　　　Appellee,　　　　　　)
　　　　　　　　　　　　　　)　　**WILLIAMSON COUNTY**
VS.　　　　　　　　　　　　)
　　　　　　　　　　　　　　)　　**HON. DONALD P. HARRIS,**
JERRY M. MULLICAN,　　　　)　　**JUDGE**
　　　　　　　　　　　　　　)
　　　　Appellant.　　　　　)　　(Attempted Second Degree Murder
　　　　　　　　　　　　　　)　　　and Aggravated Assault)

**FOR THE APPELLANT:**

**JOHN H. HENDERSON**
District Public Defender
407-C Main Street
P.O. Box 68
Franklin, TN 37065-0068

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**GEORGIA BLYTHE FELNER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JOSEPH D. BAUGH, JR.**
District Attorney General
Williamson County Courthouse
Suite G-6
P.O. Box 937
Franklin, TN 37065-0937

**OPINION FILED:** _____


**AFFIRMED**


**JERRY L. SMITH,**
**JUDGE**

**OPINION**

The defendant, Jerry M. Mullican, appeals as of right from a jury verdict of guilty to two (2) counts of attempted second degree murder and one (1) count of aggravated assault. The defendant was sentenced to eight (8) and twelve (12) years consecutively for the attempted murder charges and three (3) years concurrently for the aggravated assault charge. Defendant presents the following issues for review: (1) whether the evidence presented at trial was sufficient to support the convictions, and (2) whether the trial court improperly sentenced the defendant. The judgment of the trial court is affirmed.

**FACTS**

The defendant resided in Fairview, Tennessee, with his girlfriend, Cindy Walker. Also residing on the premises were Walker's mother, Barbara McCullough, and Walker's two children. On June 15, 1997, Walker and her mother awoke and left for work at approximately 8:00 a.m. leaving the defendant and McCullough's boyfriend, Roy Brownson, at the residence. The defendant thereafter drove to a liquor store and purchased a pint of Jack Daniels whiskey, which he consumed with Brownson upon his return. The men drank equal portions of the whiskey. The defendant left the house between 10:30 and 11:00 a.m. to pick Walker up from work and drive her to Franklin, Tennessee, to conduct some business.

After Walker's business was concluded in Franklin, she and the defendant picked her children up from day care and returned home between 4:00 and 5:00 p.m. McCullough returned to the house a short time later. That evening, while the women cleaned the house, the defendant and Brownson shared a pint of vodka and twelve beers. McCullough and Brownson went to sleep around 10:00 p.m. The defendant and Walker did the same around an hour later.

Once in bed, the defendant attempted to wake Walker to watch a

2

pornographic movie with him. Angry at being roused from sleep, Walker knocked the video tape from the defendant's hand. The defendant went to a chifferobe in the bedroom, retrieved a semi-automatic pistol, and shot Walker in the leg. Prior to the shot, McCullough and Brownson were awakened by a loud noise and got out of bed to investigate. While walking down the hall, they heard the shot, and McCullough opened the door to her daughter's bedroom. The defendant turned and shot McCullough in the face. Either immediately before or after McCullough was shot, the defendant fired another shot at Walker and missed. The defendant fired a fourth shot at Brownson, who ran to the living room and called 9-1-1. When the defendant left the bedroom to follow Brownson, Walker picked up the phone and gave her address to the 9-1-1 operator.

Brownson retrieved McCullough from the hallway and moved her to the front porch. Brownson then returned to the bedroom to try to calm the defendant. Walker was in the bedroom along with the defendant, and the two struggled as the defendant attempted to reload his pistol. Brownson distracted the defendant, and Walker was able to grab the pistol clip from him. With one round remaining in the chamber, the defendant ordered Walker to leave the bedroom. He then pointed the gun at Brownson's head. While the two men were in the bedroom, the police arrived and the defendant was arrested.

Walker and McCullough were transported to the hospital. McCullough remained hospitalized for three weeks and has since been admitted twice for additional surgeries. Walker was treated and released for the wound to her leg.

Based upon this evidence, the jury convicted the defendant of two (2) counts of attempted second degree murder and one (1) count of aggravated assault.

**SUFFICIENCY OF THE EVIDENCE**

3

The defendant alleges the state did not sufficiently prove that he intentionally and knowingly committed any of the crimes for which he was convicted.

**A.**

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,19 (Tenn. Crim. App.1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilt removes the presumption of innocence and

4

replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

**B.**

The defendant was found guilty of two (2) counts of attempted second degree murder and one (1) count of aggravated assault. The elements of attempted second degree murder are:

> (1) the defendant acted with the intent to unlawfully kill the alleged victim; and
>
> (2) the defendant's conduct constituted a substantial step toward killing the alleged victim.

Tenn. Code Ann. §§ 39-13-210(a), 39-12-101.

The elements of aggravated assault are:

> (1) the defendant intentionally or knowingly caused another to reasonably fear imminent bodily injury; and
>
> (2) the defendant used or displayed a deadly weapon.

Tenn. Code Ann. § 39-13-102(a)(1)(B).

**C.**

The defendant alleges he was intoxicated at the time of the incident and was, therefore, unable to form the requisite *mens rea* to commit the crimes. The defendant testified that he split a pint of vodka and twelve beers with Brownson in the hours preceding the shootings. The defendant further testified Brownson gave him five (5) pills, which the defendant identified as Xanex. The combination of pills and alcohol, the defendant alleges, prevented him from acting intentionally and knowingly. Brownson testified to sharing the vodka, but denied that a 12-pack of beer was consumed and further denied giving the defendant any pills.

5

Generally, the defense of intoxication negating specific intent is a question for the jury to determine. State v. Givens, 631 S.W.2d 720, 721 (Tenn. Crim. App. 1982). There must be evidence that the intoxication deprived the accused of the mental capacity to form the requisite specific intent. State v. Bowers, 744 S.W.2d 588 (Tenn. Crim. App. 1987). The jury was given a voluntary intoxication charge. They weighed the conflicting testimony on this subject, and obviously found the testimony of Brownson more credible than that of the defendant. Viewing the evidence in a light most favorable to the state, the jury was justified in rejecting this defense.

The evidence was sufficient to support the defendant's convictions. This issue is without merit.

**SENTENCING**

The defendant alleges the trial court erred in sentencing him to the maximum of twelve (12) years for the attempted second degree murder of McCullough. The defendant further contends the trial court erred in ordering the sentences for the attempted murder convictions to be served consecutively.

**A. Standard of Review**

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is

improper.  Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

In conducting our review, we are required, pursuant to Tenn. Code Ann. § 40-35-

210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statements the defendant wishes to make in his own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tenn.

Code Ann. § 40-35-210(c) provides that the presumptive sentence will be the

minimum sentence within the applicable range.  See State v. Fletcher, 805

S.W.2d 785 (Tenn. Crim. App. 1991).  However, if such factors do exist, a trial

court should start at the minimum sentence, enhance the minimum sentence

within the range for enhancement factors and then reduce the sentence within

the range for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).  No

particular weight for each factor is prescribed by the statute, as the weight given

to each factor is left to the discretion of the trial court as long as its findings are

supported by the record.  State v. Moss, 727 S.W.2d 229 (Tenn. 1986); State v.

Santiago, 914 S.W.2d 116 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-

35-210 Sentencing Commission Comments.  Nevertheless, should there be no

mitigating factors, but enhancement factors are present, a trial court may set the

sentence above the minimum within the range.  Tenn. Code Ann. § 40-35-

210(d); see Manning v. State, 883 S.W.2d 635 (Tenn. Crim. App. 1994).


**B. Length of Sentence**


The trial court in this case found three (3) enhancement factors.  The

defendant does not raise this issue, but under our *de novo* review we will

consider them.

First, the trial court found that Ms. McCullough's personal injuries were

7

particularly great. Tenn. Code Ann. § 40-35-114 (6). The court noted the permanent physical damage as well as psychological problems the victim suffered stemming from the shooting. We find this enhancement factor properly applied.

Second, the court found the defendant had no hesitation about committing the offense when the risk to human life was high. Tenn. Code Ann. § 40-35-114 (10). This factor was improperly applied as high risk to human life is inherent in an attempted second degree murder. See State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996).

Third, the court found the defendant willfully inflicted bodily injury on another person. Tenn. Code Ann. § 40-35-114 (12). Bodily injury is not an element of attempted second degree murder, therefore, the trial court properly considered this enhancement factor. See State v. Freeman, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996).

Although not found by the trial court, we note the defendant employed a firearm in the commission of the attempted murder. Tenn. Code Ann. § 40-35-114 (9). Since the use of a firearm is not an essential element of attempted second degree murder, it may be considered as an enhancement factor. See State v. Baxter, 938 S.W.2d 697, 705 (Tenn. Crim. App. 1996). This Court may consider this factor even though not relied upon by the trial court. State v. Pearson, 858 S.W.2d 879, 885 (Tenn. 1993).

The defendant asserts the trial court failed to find the following mitigating factors:

> (1) substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense (Tenn. Code Ann. § 40-35-113 (3));
>
> (2) the defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense (Tenn. Code Ann. § 40-35-113 (8));
>
> (3) the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct (Tenn. Code

8

Ann. § 40-35-113 (11));

(4) the defendant has potential for rehabilitation
(Tenn. Code Ann. § 40-35-113 (13));

(5) the defendant has a good employment record
(Tenn Code Ann. § 40-35-113 (13)); and

(6) the defendant's involvement in the crime may
have been due, to some extent, to his use of alcoholic
beverages in conjunction with controlled substances.
(Tenn. Code Ann. § 40-35-113 (13)).

The trial court considered these factors, but determined they did not apply. Under the facts of this case, we find no error in the rejection of these mitigating factors.

Even though the trial court improperly applied one (1) enhancement factor, that does not necessarily mean the defendant is entitled to a reduced sentence. State v. Baker, 956 S.W.2d 8, 18 (Tenn. Crim. App. 1997). Under our *de novo* standard of review, we have found three enhancement factors and give great weight to them. We find the sentence of twelve (12) years to be appropriate.

## C. Consecutive Sentencing

The defendant argues the trial court erred in ordering a consecutive sentence. Specifically, he contends that the evidence did not establish that he is a dangerous offender.

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. The trial court may order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Further, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The trial court found the defendant to be a dangerous offender with little regard for human life.  Tenn. Code Ann. § 40-35-115 (b)(4).  Shooting at three separate people, he injured two.  One of the victims suffered severe injuries.  All three victims could have just as easily been killed by the defendant.  We agree with the trial court's determination that the defendant is a dangerous offender.

However, regarding findings under <u>Wilkerson</u>, the court found only that the consecutive sentences are reasonably related to the severity of the offenses committed.  Nevertheless, under our power of *de novo* review, we find the consecutive sentences necessary to protect the public from further criminal conduct by the defendant and that cumulative sentences are congruent to general principles of sentencing.  We find the defendant was properly sentenced to consecutive terms.

For the reasons discussed above, the judgment of the trial court is AFFIRMED.

_____
**JERRY L. SMITH, JUDGE**

**CONCUR:**

_____
**PAUL G. SUMMERS, JUDGE**

_____
**DAVID G. HAYES, JUDGE**